J-A01034-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SITUS PROPERTIES, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| FOXHUNT REALTY CO., L.P. | : | |
| | : | |
| Appellant | : | No. 1268 EDA 2024 |

Appeal from the Judgment Entered April 25, 2024
In the Court of Common Pleas of Montgomery County
Civil Division at No(s):  2020-20502

BEFORE:  DUBOW, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:  **FILED OCTOBER 28, 2025**

Foxhunt Realty Co., L.P. ("Foxhunt") appeals from the judgment against it and in favor of Situs Properties, Inc. ("Situs"), which was entered following a non-jury trial and the denial of Foxhunt's post-trial motion for judgment notwithstanding the verdict ("JNOV").  For the reasons that follow, we conclude Foxhunt has not established an abuse of discretion or error of law in the trial court's determinations that: (1) Situs was entitled separate commission for a tenant's lease of additional space even after the agency agreement between Foxhunt and Situs ended; (2) the additional space leased by the tenant fell within the scope of Foxhunt and Situs's agreement; and (3) Situs's requests for attorney's fees pursuant the agreement were reasonable. Accordingly, we affirm.

We summarize the factual and procedural history of this appeal based on the trial court's findings of fact and our review of the record.  Foxhunt owns

an office building located at 120 Huntingdon Pike in Rockledge ("the Premises"). The Premises has three floors, a "bottom floor," a "middle floor," and a "top floor," with a total of approximately 13,000 square feet of space. The bottom and middle floors have a combined 10,000 square feet of rentable space, and the top floor has 3,000 square feet of rentable space.[1]

In 2012, Foxhunt and Situs entered into an exclusive agency agreement ("the Agreement"), which Situs drafted, for Situs to locate tenants for the Premises.[2] When Foxhunt and Situs entered into the Agreement, there were

_____

[1] Evidence concerning the square footage on each floor varied, and we use approximations of the trial court's calculations of each floor's square footage. **See** Trial Ct. Op., 6/26/24, at 7-8. For ease of discussion, we refer to the square footage of the spaces without the designation that they are approximations but will retain any specific value mentioned in a quotation.

[2] The Agreement's preface and first section stated, in relevant part:

> PREMISES: 120 Huntingdon Pike, Abington Township, Montgomery County, Rockledge, PA
>
> DESCRIPTION: Two (2) story building containing approximately 13,666 square feet, tax parcel number 18-00-01177-00-2
>
> * * * *
>
> 1. OWNER[, *i.e.*, Foxhunt] hereby appoints AGENT[, *i.e.*, Situs] as the sole and exclusive agent for, and hereby grants AGENT the sole and exclusive right to; (a) lease the Premises for a price as OWNER may hereafter approve, and (b) sell the Premises on such terms and conditions as OWNER may hereafter approve.

Agreement, 9/6/12, at Preface & § 1.

We note the Agreement contained provisions for Situs to arrange a sale of the Premises. However, Foxhunt, Situs, and the trial court did not refer to the provisions for selling the Premises at trial or in this appeal. Therefore, we
*(Footnote Continued Next Page)*

existing tenants on the top and middle floors, but the tenant on the middle floor was vacating.

Although the Premises had the aforementioned three floors, with a total of 13,000 square feet of space, the Agreement inconsistently described the Premises as a "***[t]wo (2) story building*** containing approximately 13,666 square feet . . .."  Agreement, 9/6/12, Preface (emphasis added).  With respect to Situs's rights to commissions, section 3 of the Agreement provided:

> 3. AGENT[, *i.e.*, Situs,] agrees that the OWNER[, *i.e.*, Foxhunt,] is under no obligation to enter into a written lease agreement with any tenant . . ..  A commission is earned, due and payable to AGENT when the OWNER has entered into a written lease agreement with a tenant . . . during the term of this Agreement, that remains valid and in full force and effect at the time the commission is due and payable (hereinafter referred to as "AGENT procures a tenant . . . ").  If during the term of this Agreement, or after the termination of this Agreement under the circumstances provided for in SECTION 4, either AGENT or OWNER, any other agent, broker, other person or entity, procures a tenant . . . for the Premises, or any part thereof . . ., OWNER shall pay AGENT a . . . Leasing Commission as set forth below:
>
> > Leasing Commission: SIX PERCENT (6%) of the Rent to be paid during the first year-of the lease term, plus FIVE PERCENT (5%) of the Rent to be paid the second year of the lease term, plus FOUR PERCENT (4%) of the Rent to be paid during the third and subsequent years of the lease term, which commissions shall be paid as follows FIFTY PERCENT (50%) at the time of lease execution, and FIFTY Percent (50%) at the time of lease commencement.  ***AGENT shall also be paid a commission*** (i) on options, renewals, and all subsequent periods of occupancy in the amount of the aggregate Rent according to the first sentence of this subparagraph to be paid at the commencement of the lease

_____

omit references to sales and buyers in the subsequent quotations of the Agreement.

> term, and (ii) **if the tenant leases additional or other space of OWNER** according to the first sentence of this sub-paragraph. . ..

*Id*. at § 3 (emphases added).

Section 4 of the Agreement, as referenced in section 3 and as quoted below, outlined the circumstances under which Foxhunt agreed to pay Situs commissions for prospective tenants who signed leases with Foxhunt within six months of the termination of the Agreement.

> 4. Notwithstanding that this Agreement shall have been terminated, OWNER agrees to pay AGENT the . . . Leasing Commission provided for in SECTION 3, if within SIX (6) MONTHS, the Owner shall enter into a written lease agreement for the Premises or any portion thereof a [sic] prospective tenant . . . to whom the Premises had been offered during the term of this Agreement (a "Registered Prospect"). AGENT shall provide OWNER with a written list of Registered Prospects no later than the tenth (10th) day after termination hereof.

*Id*. at § 4 (emphasis added).

Section 14 of the Agreement provided for attorney's fees and twelve percent interest upon a successful action by Situs against Foxhunt to enforce the Agreement. **See *id***. at § 14. The Agreement originally had a one-year term and a provision to terminate with thirty days prior written notice. **See *id***. at § 2.

Foxhunt and Situs renewed the Agreement by separate amendments, twice in 2014, then in 2015, 2016, and 2017. **See**, **e.g.**, Fifth Amend. to Agreement, 6/26/17, at 1. The amendments did not alter the language of the Agreement relevant in this appeal.

Upon the Agreement taking effect, Situs initially solicited tenants for the 10,000 square feet on the bottom and middle floors and prepared materials advertising the Premises as having 10,000 square feet. ***See*** Decision, 2/26/24, at 3; ***see also*** Situs's Ex. 21 (brochure describing the Premises as a "[t]wo (2) story multi-tenant office building of approximately 10,000 square feet"). Situs provided Foxhunt with reports of its effort to find tenants for the Premises. ***See*** Decision, 2/26/24, at 4. By 2014, Situs began marketing the 3,000 square feet on the top floor of the Premises, although existing tenants still occupied the top floor. ***See id***.; ***see also*** N.T., 12/20/24, at 58. By 2016, Situs prepared a flyer advertising the 3,000 square feet on the top floor of the Premises. ***See*** Decision, 2/26/24, at 4-5; Trial Ct. Op., 6/26/24, at 12; ***see also*** N.T., 12/20/24, at 41-42. Foxhunt approved the flyer and did not object to Situs's efforts with respect to the top floor. ***See*** Decision, 2/26/24, at 5; Trial Ct. Op., 6/26/24, at 12.

Situs procured Precious One's Child Care Center ("Precious One's") as a tenant, with Foxhunt and Precious One's having entered into a lease for the bottom floor in July 2017 ("original lease"). In August 2017, Situs sent Foxhunt a letter of intent to terminate the Agreement in thirty days, and the Agreement ended in September 2017. Situs gave Foxhunt a list of prospective tenants it had solicited and invoked the additional six-month period set forth in section 4 of the Agreement for Registered Prospects. Situs's list of Registered Prospects included Precious One's despite Precious One's having already signed the original lease for the bottom floor of the Premises. The

additional six-month period for commissions upon Registered Prospects signing leases ended in 2018.

In 2019, Foxhunt and Precious One's amended the original lease to include additional space on the top floor of the Premises ("amended lease"). Upon learning of the amended lease, Situs demanded an additional commission pursuant to section 3 of the Agreement. Foxhunt refused to pay.

Situs filed the underlying complaint against Foxhunt. Foxhunt answered and raised new matter and counterclaims. Situs moved for summary judgment, which Foxhunt opposed. Six days after Situs filed a reply to Foxhunt's answer to the motion for summary judgment, the Honorable Richard P. Haaz denied Situs's summary judgment motion without a hearing.

The matter proceeded to a non-jury trial before the Honorable Jeffrey S. Saltz. Situs's principal, Michael Cohen ("Cohen"), and Foxhunt's manager, Phillip Pulley ("Pulley"), testified. Cohen acknowledged he drafted the Agreement. *See* N.T., 12/20/24, at 49. He conceded he called the Premises a "two-story building" in the Agreement's description of the Premises despite knowing the Premises had three floors. *Id*. at 53. Cohen also admitted he called the Premises a "two-story building" in a brochure Situs prepared. *Id*. at 52. Cohen explained he used that description because the Premises had two floors above grade and one floor below grade and the picture in a brochure showed the two floors above grade. *See id*.

Cohen further testified about reports and flyers, which showed that in 2014 and 2016, Situs had marketed the top floor, which Cohen had referred

to as the "second floor." *Id*. at 39-42; *see also* Trial Ct. Op., 6/26/24, at 12 (finding that Cohen's references to the "second floor" meant the top floor). In his reports, Cohen noted that Pulley had responded to requests for information about the top floor. *See* N.T., 12/20/24, at 39. Cohen also testified that Pulley approved the materials advertising the top floor. *See id*. at 42.

Cohen noted Precious One's had signed the original lease for the bottom floor in 2017, while the Agreement was in force. *See id*. at 33. He added that he had also shown Precious One's the top floor and Precious One's had expressed an interest in that space when considering its move to the Premises. *See id*. at 36. Cohen acknowledged that he listed Precious One's as a Registered Prospect after the termination of the Agreement. *See id*. at 64. Cohen attempted to explain he did so because of breakdown in relations with Foxhunt and a possible dispute over Foxhunt's payment of the commission for Precious One's original lease. *See id*. at 34-35, 73.

Pulley testified the Agreement described the Premises as having two stories because he and Cohen had agreed that Situs's "responsibilities were only for the [bottom] floor and middle floor, and not the top floor." *See* N.T., 12/20/24, at 87. Pulley noted that existing tenants occupied the top floor when Foxhunt and Situs entered into the Agreement. *See id*. at 85.[3] Pulley denied granting Situs exclusive agency over the top floor, and he denied

_____

[3] Pulley noted that the lease for the existing tenants on the top floor would expire in 2017.

having any conversations with Cohen about leasing the top floor. *See id*. at 94.

The trial court found in favor of Situs and against Foxhunt. *See* Decision, 2/26/24, at 9. The trial court determined that under section 3 of the Agreement, Situs had a clear right to a separate commission when Precious One's, a tenant Situs procured during the term of the Agreement, leased additional space on the top floor of the building. *See id*. at 8. The trial court rejected Foxhunt's claim that section 4 should have precluded Situs's claim for a commission more than six months after the termination of the Agreement. *See id*. The trial court also rejected Foxhunt's claim that the Agreement only authorized Situs to find tenants for two stories of the Premises, namely, the bottom and middle floors. *See id*. The court awarded Situs $19,235.45 for the unpaid commission for the amended lease, awarded interest under section 14 of the Agreement, and gave Situs ten days to request reasonable attorney's fees. Situs then requested $53,688.32 in attorney's fees pursuant section 14 of the Agreement. *See* Situs's Mot. for Attorney's Fees, 2/29/24, unnumbered at 3. Foxhunt filed an answer to Situs's request for attorney's fees and timely filed a separate post-trial motion seeking JNOV.

On April 26, 2024, the trial court denied Foxhunt's post-trial motion, awarded Situs $50,500 in attorney's fees, and entered a total judgment of $80,675.88 in favor of Situs and against Foxhunt. *See* Order, 4/26/24 at 1-2. Foxhunt timely appealed, and both it and the trial court complied with Pa.R.A.P. 1925.

Foxhunt raises the following issues on appeal:

A. Whether the trial court erred in concluding that section 3 of the . . . Agreement applied—and not section 4— and, therefore, [Situs] was entitled to commissions under section 3 . . ..

B. Whether the trial court erred in concluding that (a) [Foxhunt] breached the . . . Agreement by failing to pay the commissions at issue for the leasing of the top floor by pre-existing tenant, Precious One's . . ., and that (b) [Foxhunt] must pay commissions to [Situs] in the amount of $19,235.45, plus interest at 12% per annum . . ..

C. Whether the trial court erred in concluding that the . . . Agreement, when considering all facts and evidence of record, covered all three (3) floors of the [Premises]—the [bottom] floor, the middle floor and the top floor—and did not exclude the top floor.

D. Whether the trial court erred in ordering [Foxhunt] to pay attorney['s] fees incurred by [Situs] in its effort to enforce its claim for commissions, even though (i) the award is unreasonable, excessive and inappropriate where, *inter alia*, the original claim for commissions is one-third the amount of attorney['s] fees sought and the dispute concerns a good faith disagreement as to the proper contract interpretation, and (ii) the award includes attorney['s] fees accrued in pursuing a specious and unsupportable motion for summary judgment that the trial court quickly denied.

Foxhunt's Br. at 5-6 (some capitalization omitted).

Foxhunt's first three issues challenge the trial court's determination that Foxhunt breached the Agreement when it did not pay a commission for Precious One's amended lease.

Our standard of review from the trial court's decision following a non-jury trial is as follows:

Our appellate role in cases arising from non-jury [matters] is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error

in any application of the law.  The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury.  We consider the evidence in a light most favorable to the verdict winner.  We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law.  However, [where] the issue . . . concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*Metro Real Estate Investment, LLC v. Bembry*, 207 A.3d 336, 339 (Pa. Super. 2019) (citation omitted).

When reviewing the trial court's decision on a motion for JNOV,

[w]e will reverse a trial court's grant or denial of a directed verdict or JNOV only when we find an abuse of discretion or an error of law that controlled the outcome of the case.  Further, the standard of review for an appellate court is the same as that for a trial court.

There are two bases upon which a directed verdict or a JNOV can be entered; one, the movant is entitled to judgment as a matter of law, and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant.  With the first, the court reviews the record and concludes that, even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in [its] favor.  Whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Hall v. Episcopal Long Term Care*, 54 A.3d 381, 395 (Pa. Super. 2012) (internal citation and brackets omitted).

It is well settled that three elements are needed to establish a breach of contract: (1) the existence of a contract, (2) a breach of duty imposed by

the contract, (3) and damages. ***See Kalili v. State Farm Fire & Cas. Co.***, 330 A.3d 396, 403 (Pa. Super. 2024).

Foxhunt's first two issues focus on the trial court's conclusion that Situs had a right to a commission more than six months after termination of the Agreement.[4]  These issues implicate the trial court's interpretation of sections 3 and 4 of the Agreement.

The proper interpretation and application of a contract involve questions of law. ***See Maisano v. Avery***, 204 A.3d 515, 520 (Pa. Super. 2019).

> The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself.  The whole instrument must be taken together in arriving at contractual intent.  Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed.  When a writing is clear and unequivocal, its meaning must be determined by its contents alone.
>
> . . . In the absence of an ambiguity, the plain meaning of the agreement will be enforced.  The meaning of an unambiguous written instrument presents a question of law for resolution by the court.

***Id***. (citation omitted).

Foxhunt argues that a proper interpretation of Situs's right to a commission required reading sections 3 and 4 together.  ***See*** Foxhunt's Br. at 20-21.  Under Foxhunt's proposed interpretation, Situs could not claim a commission unless Foxhunt entered into a written lease with a tenant while

_____

[4] Foxhunt has combined its first two issues into a single argument section.

the Agreement remained in force or within the additional six-month period following the termination of the Agreement. *See id*. at 21-23. Foxhunt emphasizes Situs sought a commission for an amended lease signed more than six months after the termination of the Agreement, and the trial court's decision effectively allowed Situs to claim commissions in perpetuity. *See id*. at 21, 23.

Foxhunt also highlights the evidence that Situs listed Precious One's as a Registered Prospect and invoked section 4's additional six-month provision. *See id*. at 25. Foxhunt points to testimony by Cohen, Situs's principal, that Precious One's had expressed an interest in leasing the top floor, even though Precious One's subsequently signed a lease for the bottom floor of the Premises. *See id*. at 26-27. Foxhunt concludes Cohen acted as if section 4 would apply to any expansion of Precious One's original lease, and Situs should be "estopped" from arguing section 4 did not apply. *Id*. at 28.

The trial court rejected Foxhunt's arguments. With respect to Foxhunt's proposed interpretation of the contract, the trial court reasoned sections 3 and 4 "address wholly different factual situations." Trial Ct. Op., 6/26/24 at 16. The trial court determined section 3 applies "where a tenant actually signs a lease during Situs['s] exclusive agency and then renews or expands the leased area, even after the Agreement has been terminated—the precise situation presented by this case." *Id*. The additional six-month period in section 4, the trial court continued, applied when Situs solicited a prospective tenant, but that prospect had not yet entered a lease as of the termination of the

- 12 -

Agreement. *Id*. The court thus concluded, "[W]here, as here, a tenant signs a lease [during the term of the Agreement] and later, after termination of the Agreement, renews or expands the lease, Situs['s rights to a commission] are governed by section 3, with no limitation period, not by section 4." *Id*.

The trial court also addressed Foxhunt's argument based on Situs's decision to list Precious One's as a Registered Prospect under section 4 of the Agreement. The court explained:

> This listing was arguably an admission by Situs that any new lease entered by Precious One's after the termination of the Agreement was subject to commission only if entered during the six-month period under section 4. The argument has some weight, but the court concluded that it simply cannot withstand the plain language to the contrary in section 3. Perhaps Situs listed Precious One's as a Registered Prospect out of an abundance of caution. Perhaps Situs simply made a mistake. In any event, the court considered the language of section 3 to be so clearly applicable that its effect could not be avoided by Situs'[s] unexplained listing of Precious One's as a Registered Prospect.

*Id*. at 16-17 (some capitalization omitted).

Following our review, we initially conclude that the trial court's interpretation of section 3 and section 4 of the Agreement is sound. Section 3 establishes Situs's right to a commission when Situs "procures a tenant," that is, when Foxhunt "enter[s] into a written lease agreement with a tenant . . . during the term" of the Agreement, or a Registered Prospect tenant enters into a written lease with Foxhunt within six months after the termination of the Agreement. Agreement, 9/6/12, at §§ 3-4.

- 13 -

The Agreement defines Situs's commission in two separate sentences. *See id*. at § 3 (defining "Leasing Commission"). The first sentence outlines the calculation of a commission based on the annual rent due under a lease and the time for payment based on the execution and commencement of a lease. *See id*. The second sentence states, in relevant part, "[Situs] **shall also be paid a commission** . . . **if the tenant leases additional or other space** of [Foxhunt] according to the first sentence of this sub-paragraph." *Id*. (emphasis added). Thus, the first sentence of the definition of a commission provides for the calculation of the base commission due when a prospective tenant signs a lease during the term of the Agreement or within six months of the termination of the Agreement, so long as Situs listed the prospect as a "Registered Prospect." *See id*. The second sentence provides for a separate commission if the tenant originally procured by Situs leases additional or other space from Foxhunt. *See id*.

Accordingly, the trial court properly concluded that when Situs originally procured Precious One's as a tenant for the bottom floor in 2017, it earned all commissions as defined in the Agreement. Those commissions included the base commission in the first sentence defining a commission due for the original lease between Foxhunt and Precious One's for the bottom floor. *See id*. Foxhunt owed a payment of the separate commission, set forth in the second sentence of the definition of a commission, once Precious One's leased additional or other space from Foxhunt. *See id*.

Furthermore, the language of the Agreement does not support Foxhunt's contention that sections 3 and 4 must be read together to limit Situs's right to all commissions to no more than six months after the termination of the Agreement. To the extent sections 3 and 4 cross-reference each other, they do so in the context of the initial procurement of a prospective tenant. ***See*** Agreement, 9/6/12, at § 3 ("If . . . after the termination of this Agreement ***under the circumstances provided for in SECTION 4, either [Situs] or [Foxhunt], any other agent, broker, other person or entity, procures*** a tenant . . . [Foxhunt] shall pay [Situs] a . . . Leasing Commission) (emphasis added); ***see also id***. at § 4 ("[Foxhunt] agrees to pay [Situs] the . . . Leasing Commission provided for in SECTION 3, if within SIX (6) MONTHS, [Foxhunt] shall enter into a written lease agreement [with] ***a prospective tenant***" who was listed as a Registered Prospect) (emphasis added). Section 4, as noted by the trial court, does not refer to leases of additional or other spaces by a tenant already "procured" by Situs under the Agreement. For these reasons, we conclude the trial court properly applied section 3 of the Agreement to hold Situs had a right to a separate commission for Precious One's amended lease for additional space, and we discern no error in the trial court's refusal to read sections 3 and 4 together to limit that right to the additional six-month period in section 4.

As to Foxhunt's argument based on the evidence that Situs listed Precious One's as a Registered Prospect upon the termination of the Agreement, we discern no abuse of discretion or error of law that would have

required JNOV. Foxhunt suggests Situs listed Precious One's as a Registered Prospect because Precious One's expressed an interest in the top floor and, thus, baldly claims that Situs should be estopped from denying the applicability of section 4. **See** Foxhunt's Br. at 27-28.[5] However, the trial court, as noted above, made **no** finding as to Situs's intent when listing Precious One's as a Registered Prospect. **See** Trial Ct. Op., 6/26/24 at 16-17 (stating Foxhunt could not avoid the plain language of section 3 based on Situs's "unexplained listing of Precious One's as a Registered Prospect"). Moreover, in light of evidence presenting alternate reasons for Situs's decision to list Precious One's as a Registered Prospect presented at trial, we will not disturb the trial court's credibility determinations or weighing of the evidence. **See Karden Constr. Servs., Inc. v. D'Amico**, 219 A.3d 619, 627 (Pa. Super. 2019) (noting that the finder of fact is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses); **see also** N.T., 12/20/24, at 34-35, 73 (indicating Cohen's testimony he listed Precious One's as a Registered Prospect because of a payment dispute on Precious One's original lease); **id**. at 36, 64 (indicating Cohen's testimony on direct and cross-

_____

[5] Although Foxhunt asserts that Situs should be estopped from denying the applicability of section 4, Foxhunt did not specify or develop a specific legal theory of estoppel or a related principle. **See generally Morgan v. Millstone Res. Ltd.**, 267 A.3d 1235, 1248-49 (Pa. Super. 2021) (summarizing the affirmative defenses of equitable estoppel and implicit waiver and noting that both require some showing that a party was misled and suffered prejudice); **Newman Dev. Grp. of Pottstown, LLC v. Genuardi's Family Mkt., Inc.**, 98 A.3d 645, 655 (Pa. Super. 2014) (noting the two types of admissions, judicial and evidentiary, both of which are limited to factual matters and do not encompass legal theories or questions of law).

examination that Precious One's expressed an interest in the top floor and Cohen listed Precious One's as a Registered Prospect). Thus, Foxhunt has not met its burden of showing that it was entitled to a judgment as a matter of law on an unspecified theory of estoppel, or that the trial evidence was such no two reasonable minds could disagree that Foxhunt was entitled to relief. *See Hall*, 54 A.3d at 395.

For these reasons, we affirm the trial court's conclusions that Situs had a right to seek a separate commission based on Foxhunt's and Precious One's signing of the amended lease for additional space in the Premises, which became due more than six months after the Foxhunt and Situs terminated the Agreement. Moreover, we discern no error of law or abuse of discretion in the trial court's conclusion that Situs was not "estopped" from claiming the separate commission under section 3 of the Agreement without regard to section 4. Therefore, Foxhunt's first two issues fail.

In its third issue, Foxhunt asserts that the trial court should have determined the Agreement did not cover the top floor of the Premises. Foxhunt claims the trial court erred by failing to construe an ambiguity in the Agreement against Situs as the drafter of the Agreement and disregarded evidence that Foxhunt and Situs intended for Situs to find tenants for the bottom and middle floors only.

The following principles govern our review:

A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This question, however, is not resolved in a

- 17 -

vacuum. Instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. . . .

***Maisano*** 204 A.3d at 520. "When . . . an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity . . .." ***Kripp v. Kripp***, 849 A.2d 1159, 1163 (Pa. 2004) (internal citation omitted). "[C]ourse of performance is always relevant in interpreting a writing," whether or not the writing is ambiguous. ***Atl. Richfield Co. v. Razumic***, 390 A.2d 736, 741 n.6 (Pa. 1978).

It is well settled that when the language of the contract is ambiguous, the provision is to be construed against the drafter. ***See Profit Wize Mktg. v. Wiest***, 812 A.2d 1270, 1275 (Pa. Super. 2002). However, our Supreme Court cautioned "that [this] rule is not intended as a talismanic solution to the construction of ambiguous language." ***Burns Mfg. Co., Inc. v. Boehm***, 356 A.2d 763, 766 n.3 (Pa. 1976); ***accord Schwartz v. Kelly Servs., Inc.***, 313 A.3d 453, 457 (Pa. Super. 2024). Therefore,

> [w]here a document is found to be ambiguous, inquiry should always be made into the circumstances surrounding the execution of the document in an effort to clarify the meaning that the parties sought to express in the language which they chose. It is only when such an inquiry fails to clarify the ambiguity that the rule of construction relied upon by the [trial court] should be used to conclude the matter against that party responsible for the ambiguity, the drafter of the document.

***Schwartz***, 313 A.3d at 457 (quoting ***Burns***).

Whether a contract is ambiguous presents a question of law. ***See Kurach v. Truck Ins. Exch.***, 235 A.3d 1106, 1116 (Pa. 2020). The

- 18 -

interpretation of an ambiguous contract, however, is for the finder of fact. **See Kripp**, 849 A.2d at 1163.

Foxhunt argues the Agreement contained a latent ambiguity as to which floors of the Premises it authorized Situs to act as agent. **See** Foxhunt's Br. at 31-32.[6] Because Situs drafted the Agreement, Foxhunt continues, the trial court erred by failing to construe the ambiguity against Situs and in favor of Foxhunt's belief that the Agreement only covered the bottom and middle floors. **See id**. at 32. Additionally, Foxhunt contends the trial court disregarded the weight of the evidence that Foxhunt and Situs had agreed to limit Situs's services under the Agreement to the bottom and middle floors only. **See id**. at 32-36. Foxhunt emphasizes testimony that Pulley, Foxhunt's manager, described the Premises as having only 10,000 square feet (the area of rentable space on the bottom and middle floors), evidence that existing tenants occupied the top floor throughout Foxhunt and Situs's relationship under the Agreement, and evidence that Situs initially marketed the Premises as having 10,000 square feet. **See id**. at 33-35. Foxhunt insists that any

_____

[6] There are two types of ambiguity, a patent ambiguity, which involves defective or obscure language that appears on the face of a writing, and a latent ambiguity, which arises from collateral facts which create uncertainty in the meaning of a writing. **See SBA Towers II LLC v. Wireless Holdings, LLC**, 231 A.3d 901, 908 (Pa. Super. 2020) (*en banc*). "The usual instance of a latent ambiguity is one in which a writing refers to a particular person or thing and is thus apparently clear on its face, but upon application to external objects is found to fit two or more of them equally." **Id**. (internal citation and quotation marks omitted).

marketing materials referring to the "second floor" of the Premises could have referred to either the middle or top floor. *See id*. at 35.

The trial court rejected Foxhunt's arguments. The trial court first calculated the rentable square feet in the Premises as including the total 10,000 square feet on the bottom and middle floors, and the additionally 3,000 square feet on the top floor. *See* Decision, 2/26/24, at 7. The court noted the inconsistencies in the Agreement's description of the Premises as a "two (2) story building," when it had three floors, but having a total of 13,000 square feet, which would encompass the rentable space on all three floors. The trial court concluded the description of the Premises as a two-story building was "presumably sufficient" to render the Agreement ambiguous as to which floors it covered. Trial Ct. Op., 6/26/24, at 11.

The trial court then analyzed Foxhunt's and Situs's course of performance.[7] The court found that while Situs's initial efforts to market the Premises focused on the bottom and middle floor, Situs started to seek tenants for the top floor of the building by 2014. *See id*. at 12. The trial court determined that Situs reported these efforts to Foxhunt in 2014 and then prepared a flyer for the top floor in 2016. *See id*. Foxhunt, the court found, did not object to Situs's marketing of the top floor, approved the 2016 flyers, and continued to sign amendments to renew the Agreement, with the last

_____

[7] The trial court emphasized it could consider course of performance evidence regardless of whether there was an ambiguity in the Agreement. *See* Trial Ct. Op., 6/26/24, at 11.

amendment being executed in 2017. *See id*. The trial court concluded that Foxhunt's and Situs's conduct pursuant to the Agreement "strongly support[ed] Situs's position that it had an exclusive agency for all three floors of the [Premises]." *Id*.

Additionally, the trial court determined Foxhunt's evidence that the Agreement only covered bottom and middle floors of the Premises was "less persuasive." *Id*. In weighing the evidence, the court concluded that the Agreement's reference to the Premises as containing more than 13,000 square feet made clear the Agreement covered all three floors. *See id*. at 13. The court also noted Cohen's explanation for describing the Premises as having two stories because only two floors, the middle and top floors, were above grade and the bottom floor was below grade. *Id*. Thus, the court concluded that even if ambiguous, the top floor of the building fell within the Agreement, and the presumption that the Agreement should be construed against Situs as the drafter did not apply. *See id*. at 13-14.

The record supports each of the trial court's findings, and we agree with the trial court's thorough analysis and well-reasoned conclusion that the Agreement covered all three floors of the Premises. *See Metro Real Estate*, 207 A.3d at 339. Foxhunt's arguments improperly focus on the evidence when viewed in a light most favorable to itself. *See Hall*, 54 A.3d at 395. Moreover, we discern no abuse of discretion or error of law in the trial court's conclusion that the weight of the extrinsic evidence favored construing any ambiguity in the Agreement as covering the entire Premises, not just two floors of the

Premises. Thus, the trial court did not err when refusing to construe the alleged ambiguity against Situs and in favor of Foxhunt. *See Kripp*, 849 A.2d at 1163; *Burns*, 356 A.2d at 766 n.3.[8] In sum, Foxhunt has not met its burden of showing its entitlement to JNOV, and its third issue merits no relief.

Foxhunt's fourth issue challenges the award of attorney's fees under section 14 of the Agreement, under which Foxhunt agreed "to be responsible and pay for [Situs's] fees, costs, expenses and attorney's fees . . . in any successful action to enforce th[e] Agreement." Agreement, 9/6/12, at § 14.

"It is hornbook law that the reasonableness of attorney['s] fees is a matter for the sound discretion of the trial court and will be changed by an appellate [c]ourt only when there is a clear abuse of discretion." *Vinculum, Inc. v. Goli Techs., LLC*, 310 A.3d 231, 242 (Pa. 2024) (internal citation, quotation marks, and brackets omitted).

Under the "American Rule," a litigant is responsible for its own counsel's fees absent bad faith or vexatious conduct, but a freely negotiated fee-shifting agreement between the parties is an exception to that rule, and a court will enforce such an agreement according to its terms. *See id*. at 244; *McMullen v. Kutz*, 985 A.2d 769, 775 (Pa. 2009). When reviewing a request for attorney's fees pursuant to an agreement between the parties, the trial court

_____

[8] We emphasize that while Situs drafted the Agreement, nothing in the record demonstrates that Situs, or Cohen as its principal, had any disproportionate bargaining power over Foxhunt, or Pulley as Foxhunt's manager. The record suggests Cohen and Pulley were both experienced professionals, and both were capable of enlisting professional legal support when needed.

has the authority to consider whether the fees claimed are reasonable, and to reduce the fees sought by a party. *See McMullen*, 985 A.2d at 777.[9]

Foxhunt contends that the attorney's fees awarded to Situs were unreasonable and excessive because they were nearly three times the amount of the unpaid commission recovered by Situs. *See* Foxhunt's Br. at 37-38 (quoting the *LaRocca* and emphasizing the amount in controversy is an important factor when assessing the reasonableness of attorney's fees). Foxhunt also claims Situs engaged in motions practice that increased the cost of a relatively straightforward controversy. *See id*. at 38. Foxhunt specifically criticizes Situs for filing a motion for summary judgment, which the trial court

_____

[9] Our Supreme Court has yet to articulate a precise standard for assessing reasonableness in the context of a contractual fee-shifting provision. *See McMullen*, 985 A.2d at 777 (holding only that the trial court had the authority to consider the reasonableness of the attorney's fees claimed under a separation and property settlement agreement but declining to consider whether the fees claimed were reasonable); *id*. at 779 (Saylor, J., concurring and dissenting); *id*. at 783 (Castille, C.J., dissenting). To the extent the *McMullen* Court cited *In re Estate of LaRocca*, 246 A.2d 337, 339 (Pa. 1968), it did so in the context of a party's arguments in the appeal. *See id*. at 774 (summarizing the appellant's arguments and quoting the *LaRocca* factors when assessing attorney's fees, which include: (1) the amount of work performed; (2) the character of services rendered; (3) the difficulty of the problems solved; (4) the importance of the litigation; (5) the amount of money or value of the property in question; (6) the degree of responsibility incurred; (7) whether the fund involved was created by the attorney; (8) the professional skill and standing of the attorney in his profession; (9) the results he was able to obtain; (10) the ability of the client to pay a reasonable fee for services rendered). Nevertheless, we have continued to use *LaRocca* as a standard for reviewing awards of contractual attorney's fees. *See*, *e.g.*, *Carmen Enterprises, Inc. v. Murpenter, LLC*, 185 A.3d 380, 390 (Pa. Super. 2018) (applying *LaRocca* but noting that "[t]he trial court does not have to address every *LaRocca* factor") (internal citation omitted).

promptly denied. *See id*. Foxhunt characterizes that motion as premature and meritless and asserts that the effort toward summary judgment proved to be a waste of time and resources. *See id*.

The trial court found these claims meritless. The court explained:

Certainly the amount of the underlying claim is a legitimate factor to consider in setting a "reasonable" amount of attorney fees. On the other hand, contractual fee-shifting provisions are generally designed to allow a party to enforce its contractual rights even when a modest amount is at stake. In the present case, the amount of attorney['s] fees awarded, $50,500, is 2.63 times the principal amount of the commission to which Situs was entitled and 1.67 times the principal amount plus accrued interest. The court does not find these ratios to be excessive. Further, the court scrutinized the itemized invoices submitted by Situs and found them to be reasonable. . . . [T]he Court reduced the amount of fees sought by Situs by more than $3,000 to reflect "time expenditures not adequately described." Finally, although the fees included time spent by Situs'[s] counsel on a motion for summary judgment that was ultimately unsuccessful, the court did not find that that motion was frivolous or otherwise excludable from the attorney fee award.

Situs, having fully prevailed on its claim in hard-fought litigation, was entitled under section 14 of the Agreement to recover the bulk of its fees incurred in reaching a favorable result. Under all of the circumstances, the court's fee award was not unreasonable.

Trial Ct. Op., 6/26/24, at 18.

Following our review, we discern no abuse of discretion in the trial court's assessment of the reasonableness of its award of attorney's fees under the circumstances of this case. Although Situs expended in legal fees more than double the amount of the commission it sought to recover, given the extensive litigation, we agree with the trial court that Situs's legal fees were reasonable. To the extent Foxhunt criticizes Situs for litigating a summary

judgment motion, our review confirms the trial court's conclusion that the motion was not frivolous. Indeed, regardless of the chances that a court would have granted summary judgment, the litigation of the motion had at least the salutary effect of clarifying the issues and evidence for trial. ***See generally Elder v. Nationwide Ins. Co.***, 599 A.2d 996, 1000 (Pa. Super. 1991) (noting that one purpose of summary judgment "is to allow the moving party to 'pierce the pleadings,' thus requiring the non-moving party to disclose the facts of his claim or defense") (internal citation omitted). Thus, we discern no abuse of discretion in the trial court's determination to award $50,500 in attorney's fees.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/28/2025