J-S45002-22

2023 PA Super 153

| JANE DOE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THE CHEESECAKE FACTORY, THE | : | |
| CHEESECAKE FACTORY BAKERY, | : | |
| INC., THE CHEESECAKE FACTORY | : | No. 254 EDA 2022 |
| RESTAURANTS, INC., KING OF | : | |
| PRUSSIA MALL, ALLIED UNIVERSAL | : | |
| SECURITY SERVICES, SIMON | : | |
| PROPERTY GROUP, INC., AND | : | |
| FACUNDO MARTINEZ | : | |
| | : | |
| | : | |
| APPEAL OF: THE CHEESECAKE | : | |
| FACTORY, THE CHEESECAKE | : | |
| FACTORY BAKERY, INC., THE | : | |
| CHEESECAKE FACTORY | : | |
| RESTAURANTS, INC | : | |

Appeal from the Order Entered December 17, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 190605783

BEFORE: OLSON, J., STABILE, J., and MURRAY, J.

OPINION BY OLSON, J.: **FILED AUGUST 9, 2023**

Appellants, The Cheesecake Factory, The Cheesecake Factory Bakery, Inc., The Cheesecake Factory Restaurants, Inc. (collectively referred to as "Cheesecake Factory" or "Appellants") appeal from the order entered on December 17, 2021, denying Appellants' motion to vacate an arbitration award and granting a petition to confirm an arbitration award filed by Plaintiff, Jane Doe ("Plaintiff"). We affirm.

The trial court briefly set forth the facts and procedural history of this case as follows:

On June 11, 2019, Plaintiff commenced [a] negligence action against [Cheesecake Factory,] King of Prussia Mall, Simon Property Group, Inc., and Allied Universal Security Services ("Allied").[1]   On August 12, 2019, Allied joined Facundo Martinez as an additional defendant.

On October 1, 2019, [Cheesecake Factory] filed a motion to compel arbitration under the Arbitration Act ("FAA"), 9 USC § 10 (FAA), and to stay the [judicial] action pending arbitration.  On October 21, 2019, Plaintiff filed an opposition to the motion, [claiming] that Plaintiff had not agreed to arbitrate the at-issue claims and [further claiming] that the claims at issue were excluded from the arbitration agreement.  A [] hearing on the motion was scheduled before the Hon[orable] Daniel Anders for December 4, 2019 and subsequently rescheduled for January 29, 2020.  Following the hearing, the parties submitted supplemental briefs and on February 6, 2020, Judge Anders granted [Cheesecake Factory's] motion, ordered the matter to arbitration, and stayed the litigation regarding [] Cheesecake Factory only. The litigation continued with regard to the other [d]efendants[,] King of Prussia Mall, Simon Property Group, Allied, and Facundo Martinez.

[O]n or about November 2020, Plaintiff and [] Cheesecake Factory submitted the matter to arbitration [] before retired judge[, the Honorable] William F. Furber acting as the arbitrator.  Arbitrator Furber issued a "final award" on November 30, 2020 (and served to the parties on December 21, 2020), holding that there was a valid agreement to arbitrate, but that the dispute at issue did not fall within the scope of the arbitration agreement.  In reaching his decision, Arbitrator Furber cited the "delegation clause" of the arbitration agreement, which specifically gave [] Arbitrator [Furber] the "exclusive authority" to decide the applicability and

---

[1]  Plaintiff's complaint alleges claims of vicarious liability, negligence, negligence *per se*, negligent misrepresentation and negligent failure to rescue. Plaintiff claims the defendants failed to take any actions to protect her from sexual harassment and ultimately a sexual assault committed by a co-worker, Facundo Martinez.

enforceability of the arbitration agreement.[2]  Arbitrator Furber then relinquished jurisdiction to the [trial court].

On January 11, 2021, Plaintiff filed a petition to confirm the arbitration award and, on January 21, 2021, [] Cheesecake Factory filed a motion to vacate the arbitration award.  […]By agreement of the parties, [the trial] court held the motions in abeyance, lifted the stay as to Cheesecake Factory during the pendency of at issue motions, and ordered that all parties complete discovery.  On November 30, 2021, [the trial] court heard argument on the motions and the parties submitted supplemental briefs on December 7, 2021.  On December [17], 2021, [the trial] court [entered an order] grant[ing] Plaintiff's motion to confirm the arbitration award and den[ying] Cheesecake Factory's motion to vacate the arbitration award.

_____

[2]  More specifically, the trial court noted:

The arbitration agreement at issue is contained within an employee manual and contract for employment signed by [] Plaintiff on or about November 19, 2015.  In the contract, the parties agreed to arbitrate employment disputes under the [FAA].  As part of the arbitration agreement, the contract contained a delegation clause, relied upon by Arbitrator Furber, which provides that the chosen arbitrator:

> **shall have the exclusive authority** to resolve any dispute **relating to the interpretation**, **applicability**, enforceability, or formation of this Agreement, including, but not limited to, any claim that all or any part of this Agreement is void or voidable.

In relying on this clause, Arbitrator Furber determined that while a valid contract existed, the interpretation of the at[-]issue arbitration agreement did not support a finding that the claim was arbitrable.  Arbitrator Furber concluded that "under no circumstance can sexual assault be a foreseeable consequence of employment as a restaurant server" and that the "assault was solely the result of the co-worker's independent criminal conduct and was in no way directly or indirectly related to Plaintiff's employment."

Trial Court Opinion, 9/16/2022, at 3 (record citations and some unnecessary capitalization omitted; emphasis in original).

Trial Court Opinion, 9/16/2022, at 1-3 (unnecessary capitalization omitted).

This timely appeal resulted.[3]

Appellants raise the following issue for our review:

[…W]hether the trial court had the authority to vacate an arbitrator's award where the arbitrator abused his power and issued a final award that ignored the plain language of the arbitration agreement between the parties and the facts established in the pleadings[?]

Appellants' Brief at 5.

Appellants argue that the arbitrator abused his discretion with respect to the threshold issue of the scope of the arbitration agreement between Plaintiff and Appellants. Appellants emphasize that the arbitrator ignored the broad plain language of the arbitration agreement which provided that Appellants and Plaintiff "agree to arbitrate before a neutral arbitrator any and all disputes or claims … that **arise out of or relate** to … recruitment, employment, or separation from employment with the company." *Id.* at 8 (emphasis in original, record citation omitted). Moreover, Appellants contend that the arbitration agreement covered claims, involving any employee, for causes including infliction of emotional distress, negligence, or any other tort-like cause of action relating to or arising from the employment relationship.

_____

[3] Upon our review of the certified record, while the order appealed from was dated December 9, 2021, the prothonotary did not enter the order on the docket or give notice under Pa.R.Civ.P. 236, until December 17, 2021. **See** Pa.R.A.P. 301(b)(1) (order does not become appealable until entry on appropriate trial court docket). Thus, Appellant's notice of appeal filed on January 12, 2022 was timely. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on September 16, 2022.

*Id.* (record citation omitted). Further, Appellants maintain that the arbitrator ignored the verified allegations in Plaintiff's complaint wherein she alleged that the sexual assault occurred during the course and scope of her employment. *Id.* at 17-18. Appellants argue that the plain language of the arbitration agreement controls the resolution of this appeal, that the arbitrator's actions amounted to an amendment or alteration of the agreement, and, therefore, that the arbitrator acted without authority. *Id.* at 19-25. Appellants assert that "it [was] patently incorrect" for "the [a]rbitrator, without any evidence, but apparently based purely on his own supposition, [to] rule[] that it [was] 'inconceivable' that parties intended that [Plaintiff's] sexual assault-based claim would be subject to the arbitration provision." *Id.* at 12.

We recognize the following legal precepts:

Where a party to a civil action seeks to compel arbitration the trial court must first determine if a valid agreement to arbitrate exists between the parties. If the trial court determines that such an agreement does exist, it must then determine if the dispute involved is within the scope of the arbitration provision. The scope of arbitration is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally. If it appears that a dispute relates to a contract's subject matter and the parties agreed to arbitrate, all issues of interpretation and procedure are for the arbitrators to resolve. The existence of an agreement and whether a dispute is within the scope of the agreement are questions of law and our review is plenary.

*Warwick Twp. Water & Sewer Auth. v. Boucher & James, Inc.*, 851 A.2d 953, 955 (Pa. Super. 2004) (internal quotations and citations omitted).

This Court has previously determined:

- 5 -

We review a trial court's denial of a motion to compel arbitration for an abuse of discretion and to determine whether the trial court's findings are supported by substantial evidence. In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration. The first determination is whether a valid agreement to arbitrate exists. The second determination is whether the dispute is within the scope of the agreement.

Whether a claim is within the scope of an arbitration provision is a matter of contract, and as with all questions of law, our review of the trial court's conclusion is plenary. The scope of arbitration is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally. These are questions of law and our review is plenary.

Arbitration is a matter of contract, and parties to a contract cannot be compelled to arbitrate a given issue absent an agreement between them to arbitrate that issue. Even though it is now the policy of the law to favor settlement of disputes by arbitration and to promote the swift and orderly disposition of claims, arbitration agreements are to be strictly construed and such agreements should not be extended by implication.

*Elwyn v. DeLuca*, 48 A.3d 457, 461 (Pa. Super. 2012) (citations omitted).

Furthermore, we have also recounted

unless some limitation on his/her authority is imposed by the parties, the arbitrator may decide all matters necessary to dispose of any disputed claims subject to arbitration since in the absence of such a restriction, the court may not impose one *sua sponte*. Were this not the case, contractual arbitration clauses would be of infinite length to accommodate any conceivable contingency. Accordingly, "all" does mean "all" unless otherwise agreed by the parties.

*Theodore C. Wills Co. v. Sch. Dist. of Boyertown Area*, 837 A.2d 1186, 1189–1190 (Pa. Super. 2003). "[A]rbitrators' authority is restricted to the powers the parties have granted them and the trial court may examine whether the arbitrators exceeded the scope of their authority" as "determined

- 6 -

by the intention of the parties [] in accordance with the rules governing contracts generally." ***Boulevard Assocs. v. Seltzer P'ship***, 664 A.2d 983, 987 (Pa. Super. 1995)(citation omitted).

Our Supreme Court has recognized:

> In interpreting the language of a contract, [the reviewing court] attempt[s] to ascertain the intent of the parties and give it effect. When the words of an agreement are clear and unambiguous, the intent of the parties is to be ascertained from the language used in the agreement, which will be given its commonly accepted and plain meaning. Additionally, in determining the intent of the contracting parties, all provisions in the agreement will be construed together and each will be given effect. Thus, [the reviewing court should] not interpret one provision of a contract in a manner which results in another portion being annulled.

***LJL Transp., Inc. v. Pilot Air Freight Corp.***, 962 A.2d 639, 647–648 (Pa. 2009) (internal citations omitted).

Here, there is no dispute that the parties entered into a valid, mutual agreement to arbitrate claims on November 19, 2015. In determining whether Plaintiff's claims were covered under the terms of the arbitration agreement, the arbitrator examined, in pertinent part, the following "claims covered" provision:

### Claims Covered by the Agreement

[Cheesecake Factory] and [Plaintiff] agree to arbitrate before a neutral arbitrator any and all disputes or claims between [Cheesecake Factory] and [Plaintiff] that arise out of or relate to [] recruitment, employment or separation from employment with [Cheesecake Factory] (currently existing or which may arise in the future), including claims involving and/or against any current or former officer, director, shareholder, agent or employee of [Cheesecake Factory], and/or against any current or former [Cheesecake Factory] benefit plan sponsors, fiduciary or

- 7 -

administrator, whether the disputes or claims arise under common law, in tort, in contract, or pursuant to a statute, regulation, or ordinance now in existence or which may in the future be enacted or recognized, including, but not limited to […] claims for wrongful termination of employment, retaliation, violation of public policy, constructive discharge, infliction of emotional distress, misrepresentation, discrimination, negligence, interference with contract or prospective economic advantage, defamation, unfair business practices, and any other tort or tort-like causes of action relating to or arising from the employment relationship or the formation or termination thereof[.]

Arbitration Agreement, 11/19/2015, at 1-2.

The trial court, however, examined another provision of the arbitration agreement dealing with "resolution of disputes" that provides, in relevant part:

**Resolution of Disputes**

\*          \*          \*

[Cheesecake Factory] and [Plaintiff] understand and agree that any dispute as to the arbitrability of a particular issue or claim pursuant to this [a]greement is to be resolved in arbitration. **The arbitrator shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this [a]greement including, but not limited to, any claim that all or any part of this [a]greement is void or voidable**.

*Id.* at 4 (emphasis added).

In the order that denied Appellants' motion to vacate the arbitration award and granted Plaintiff's motion to confirm the award, the trial court initially determined:

While [the trial] court would find that Plaintiff's claims **did** arise from and do relate to her employment, a mistake of law is not a basis to vacate [this a]rbitration [a]ward. The [c]ontract at issue specifically indicated that the [a]rbitrator [enjoyed exclusive] authority to determine whether the dispute at issue was subject

to arbitration or not. The [a]rbitrator interpreted the contract and, under the authority delegated to him, found that the dispute was not subject to arbitration. In making this finding, the arbitrator may have made a mistake of law, but did not exceed his authority.

Order of Court, 12/17/2021, at n.1 (emphasis in original).

In its subsequent opinion pursuant to Pa.R.A.P. 1925(a), the trial court additionally opined:

Cheesecake Factory argued that Arbitrator Furber exceeded his powers because he concluded that [Plaintiff's] claims were beyond the scope of the [a]rbitration [a]greement and did not reach the decision on the merits of the claims asserted in this litigation. As such, [] Cheesecake Factory urged [the trial court] to vacate the [a]rbitration [a]ward. [The trial court] disagreed, having found that the delegation clause [("resolution of disputes" provision)] of the [a]rbitration [a]greement is clear on its face and the [a]rbitrator did not act outside of the powers delegated to him in that clause when he decided the threshold issue of arbitrability of the claims.

Trial Court Opinion, 9/16/2022, at 4 (citation omitted).

For the reasons that follow, we agree with the trial court's assessment. Initially, we note that Cheesecake Factory fails to address the trial court's reliance on the resolution of disputes provision of the arbitration agreement in any way. Cheesecake Factory does not claim that the trial court erroneously relied upon that provision or that the language of the provision was ambiguous or somehow unclear.[4] Instead, Cheesecake Factory again argues that the arbitrator misinterpreted the claims covered provision of the agreement.

---

[4] We note, however, that "[w]here the language of the contract is ambiguous, the provision is to be construed against the drafter." **State Farm Fire & Cas. Co. v. PECO**, 54 A.3d 921, 928 (Pa. Super. 2012) (citation omitted). Here, Cheesecake Factory drafted the arbitration agreement.

However, as set forth above, the plain language of the arbitration agreement states that "any dispute as to the arbitrability of a particular issue or claim pursuant to this [a]greement is to be resolved in arbitration" and that "the arbitrator shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this [a]greement." Arbitration Agreement, 11/19/2015, at 4. Thus, the arbitrator had the exclusive authority to determine the scope of the arbitration agreement and Cheesecake Factory does not challenge this determination.

Contrary to Appellants' contentions, the arbitrator examined the claims covered provision of the arbitration agreement and concluded that "under no circumstances can sexual assault be a foreseeable consequence of employment as a restaurant server" and that the "assault was solely the result of [the] co-worker's independent criminal conduct and was in no way directly or indirectly related to [Plaintiff's] employment." Trial Court Opinion, 9/16/2022, at 3, *citing* Arbitrator's Decision, 11/30/2019, at 4. As such, the arbitrator examined the claims covered provision, applied it as required, and rendered a decision. Cheesecake Factory simply does not agree with that decision.

The resolution of disputes provision of the arbitration agreement, as set forth above, makes clear that the arbitrator has exclusive authority to resolve **any** dispute relating to arbitrability. Thus, the trial court lacked authority to examine the merits of the arbitrator's decision concerning the claims covered provision. Put differently, the relevant provisions of the arbitration agreement

provisions were examined by the arbitrator and these provisions were given effect, as written. The claims covered provision was not rendered superfluous, or annulled by, the resolution of disputes provision. Overall, the plain language of the agreement shows Cheesecake Factory and Plaintiff intended to grant the arbitrator the power to exclusively determine arbitrability. The arbitrator did just that and Cheesecake Factory's mere disagreement does not merit relief. If Cheesecake Factory did not want arbitrability of claims to be exclusively determined by the arbitrator, it should not have included the resolution of disputes provision in the contract. Accordingly, for all of the foregoing reasons, we conclude that the trial court did not err in denying Cheesecake Factory's motion to vacate the arbitration decision.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/09/2023

- 11 -