J-A24010-23

2024 PA Super 62

NANCY M. SCHWARTZ : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
KELLY SERVICES, INC. :
:
Appellant : No. 755 EDA 2023

Appeal from the Order Entered March 17, 2023
In the Court of Common Pleas of Philadelphia County
Civil Division at No: 220902653

BEFORE: STABILE, J., DUBOW, J., and SULLIVAN, J.

OPINION BY STABILE, J.:                          **FILED MARCH 28, 2024**

This interlocutory appeal concerns the scope of an Arbitration Agreement between Appellant, Kelly Services, Inc. (Kelly), and Nancy M. Schwartz (Schwartz). It is undisputed that Schwartz retained Kelly to help her find a new teaching position, and that the parties executed an Arbitration Agreement covering all claims relating to Schwartz's "employment." Schwartz later filed suit against Kelly, alleging that she was induced to quit her job so that she could begin a new one that never materialized. Kelly petitioned the Court of Common Pleas of Philadelphia County (trial court) to compel arbitration, but the petition was summarily denied because Schwartz's new term of "employment" had never begun. Kelly appeals that ruling, and on review, we find that the ambiguity of the language in the Arbitration Agreement posed a question of fact that the trial court must resolve after considering extrinsic evidence on remand.

The pertinent facts are taken from the allegations in Schwartz's complaint, which for present purposes are assumed to be true. From September 1, 2022, through June 30, 2023, Schwartz was employed as a teacher by the Haddon Township Board of Education in Westmont, New Jersey (Haddon). In October 2022, Schwartz was contacted by Kelly about a potential full-time position at Radnor Township School District (Radnor). Schwartz expressed interest in a role with Radnor because it was higher paying than her position with Haddon, and it was located only minutes away from her home.

Kelly asked Schwartz to complete her "application and hiring process," which was part of Kelly's "on-boarding" procedures for the placement of a new employee. Complaint, 11/29/2022, at ¶ 9. Schwartz continued working to complete her application materials, and during her discussions with Kelly, she was allegedly advised to resign from her position with Haddon so that she could begin working for Radnor.

On October 14, 2022, Schwartz and Kelly executed the Arbitration Agreement.[1] By doing so, they agreed to "use binding arbitration, instead of going to court, for any 'Covered Claims' that arise between" Kelly, and/or any of its employees, clients, or customers." Of particular relevance here,

_____

[1] The full title of the document is, "Dispute Resolution and Mutual Agreement to Binding Arbitration."

paragraph 2 of the Arbitration Agreement defined the "covered claims" that would be arbitrable:

> **Claims Subject to Agreement.** The "Covered Claims" under this Agreement shall include all common-law and statutory claims **relating to my employment**, including, but not limited to, any claim for breach of contract, unpaid wages, wrongful termination, and for violation of laws forbidding discrimination, harassment, and retaliation on the basis of race, color, religion, gender, age, national origin, disability, and any other protected status. I understand and agree that arbitration is the only forum for resolving Covered Claims, and that both Kelly Services and I hereby waive the right to a trial before a judge or jury in federal or state court in favor of arbitration for Covered Claims.

Arbitration Agreement, 10/14/2022, at ¶ 2 (emphasis added; emphases in original omitted).

Schwartz tendered her resignation to Haddon on October 20, 2022. One week later, she was told by Kelly that the full-time position with Radnor was no longer available. Radnor could only offer a part-time position for less money per day than what Schwartz had discussed with Kelly. On October 28, 2022, Haddon accepted Schwartz's resignation, and she was unsuccessful in her attempt to return to that position.

Schwartz filed a complaint against Kelly, alleging two counts: tortious interference as to her contract with Haddon, and negligence as to Kelly's misadvise about her employment status with Radnor. Kelly filed preliminary objections, challenging the legal sufficiency of both Schwartz's claims. In the alternative, Kelly filed a preliminary objection in the form of a petition to compel arbitration and dismiss the case.

In the order on review, Kelly's preliminary objection in the form of a petition to compel arbitration was overruled; a preliminary objection as to the tortious interference count was sustained, and the remaining preliminary objections were overruled. Kelly appealed, challenging only the denial of the petition to compel arbitration, and in its 1925(a) opinion, the trial court gave its reasons why that portion of its order should be upheld. The trial court construed the Arbitration Agreement such that its "covered claims" did not include those relating to Schwartz's position with Haddon. *See* 1925(a) Opinion, 5/17/2023, at 5-6. The scope of the Arbitration Agreement was limited in this manner based on the assumption that "employment," as used in the document, was meant to refer only to prospective jobs procured by Kelly for Schwartz. *See id*.

The only issue now raised in Kelly's brief is whether the trial court erred in ruling that the Arbitration Agreement does not cover Schwartz's common-law claims. Kelly contends that the Arbitration Agreement covers all claims relating to "pre-employment," such as the "application process" that precedes a prospective employee's start-date with a new employer, making Schwartz's claims arbitrable as a matter of law. Schwartz, on the other hand, argues that since her claims only relate to, and arise from, her past employment with Haddon, the Arbitration Agreement cannot apply.

Generally, an order overruling preliminary objections is interlocutory and unappealable. *See In re Estate of Atkinson*, 231 A.3d 891, 897 (Pa. Super. 2020). An exception to that general rule is that "an order overruling

- 4 -

preliminary objections that seek to compel arbitration is an interlocutory order appealable as of right pursuant to 42 Pa.C.S. § 7320(a)(1) and Pa.R.A.P. 311(a)(8)." **Estate of Atkinson**, 231 A.3d at 897 (citations omitted). **See also** Pa.R.A.P. 311(a)(8); 42 Pa.C.S. § 7320(a)(1). Thus, the interlocutory order now under review is immediately reviewable.

A party may petition the trial court to enforce the terms of an arbitration agreement by way of a preliminary objection, and "[w]hether a claim is within the scope of an arbitration provision is a matter of contract." **Griest v. Griest**, 183 A.3d 1015, 1022 (Pa. Super. 2018) (quotation omitted); **see also Gaffer Ins. Co., Ltd. v. Discover Reins. Co.**, 936 A.2d 1109, 1112 (Pa. Super. 2007) (explaining that whether, under the terms of the parties' agreement, the "parties are required to submit their dispute to arbitration – is strictly one of contract interpretation"). A court shall promptly determine all preliminary objections, and "[i]f an issue of fact is raised, the court shall consider evidence by depositions or otherwise." Pa.R.C.P. 1028(c)(2). "Because contract interpretation is a question of law, [this Court's] review of the trial court's decision is *de novo* and [the] scope of review is plenary." **Gaffer**, 936 A.2d, at 1112-13.

A determination as to the scope of an arbitration agreement is governed by the following principles:

> (1) arbitration agreements are to be strictly construed and not extended by implication; and (2) when parties have agreed to arbitrate in a clear and unmistakable manner, every reasonable effort should be made to favor the agreement unless it may be said with positive assurance that the arbitration clause involved is

not susceptible to an interpretation that covers the asserted dispute.

To resolve this tension, courts should apply the rules of contractual constructions, adopting an interpretation that gives paramount importance to the intent of the parties and ascribes the most reasonable, probable, and natural conduct to the parties. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement.

*Callan v. Oxford Land Development, Inc.*, 858 A.2d 1229, 1233 (Pa. Super. 2004) (internal citations and quotation marks omitted).[2]

In the present case, we find it difficult (if not impossible) to apply the above rules of construction to the facts at hand because the record before us is inadequate. Schwartz alleged in her complaint that she retained Kelly to help obtain a new teaching position, and the parties entered a contract to that effect. However, the terms of such a contract appear nowhere in the record.

The only relevant document that does appear in the record, the Arbitration Agreement, vaguely alludes to Schwartz's "employment," the term now at the center of the parties' dispute over the scope of "covered claims" that must be arbitrated. But the Arbitration Agreement does not convey, *inter alia,* the terms of employment of Schwartz by Kelly, Kelly's services, how Kelly was to be compensated, or describe the process by which Schwartz would

---

[2] The pertinent language in the parties' Arbitration Agreement is commonly referred to as an "unlimited arbitration clause" that must be construed as "having the broadest conceiving language" requiring arbitration, as it reflects the parties' intent to make the scope of arbitration "unlimited." *See Borough of Ambridge Water Auth. v. Columbia*, 328 A.2d 498, 501 (Pa. 1974).

begin a new position. The absence of such information makes the document's use of the term, "employment," susceptible to each of the parties' competing interpretations.

Consistent with Pa.R.C.P. 1028(c)(2), a contract term that is ambiguous on its face may not be construed against the drafter unless extrinsic evidence bearing on the term's meaning has first been considered:

> Where a document is found to be ambiguous, inquiry should always be made into the circumstances surrounding the execution of the document in an effort to clarify the meaning that the parties sought to express in the language which they chose. It is only when such an inquiry fails to clarify the ambiguity that the rule of construction relied upon by the chancellor should be used to conclude the matter against that party responsible for the ambiguity, the drafter of the document.

**Burns Mfg. Co., Inc. v. Boehm**, 356 A.2d 763, 767 n.3 (Pa. 1976) (internal citations excluded).

Here, Kelly's preliminary objections seeking to compel arbitration raised a question of fact as to how the parties intended for "employment" to be construed in the Arbitration Agreement. Moreover, the allegations in the complaint established the existence of additional contract terms which presumably shed light on the nature of the relationship between the parties. This made it incumbent on the trial court to consider available extrinsic evidence relevant to that narrow factual question. **See id.**; **see also** Pa.R.C.P. 1028(c)(2). By instead summarily ruling in Schwartz's favor, the trial court erroneously resolved a question of fact.

To correct the error, and to comport with the requirements of Pa.R.C.P. 1028(c)(2), we must vacate the portion of the trial court's order denying Kelly's petition to enforce the Arbitration Agreement and remand the case so that the trial court may "consider evidence by depositions or otherwise." Pa.R.C.P. 1028(c)(2).

Order affirmed in part and reversed in part. Case remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/28/2024