J-S46034-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SHERRI L. RANNARD, ADMINISTRATOR OF THE ESTATE OF ROBERT J. GALLAGHER | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | No. 868 WDA 2025 |
| WEXFORD HEALTH SERVICES, INC., WEXFORD HEALTH SOURCES, INC. | : : : | |

Appeal from the Order Entered June 11, 2025
In the Court of Common Pleas of Erie County Civil Division at No(s):
10226 of 2015

BEFORE:  BOWES, J., NICHOLS, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED: JUNE 2, 2026**

Appellant, Sherri L. Rannard, administrator of the estate of Robert J. Gallagher, appeals from the order entered in the Erie County Court of Common Pleas, which denied Appellant's motion to vacate an arbitration award. We affirm.

In its opinion, the trial court correctly set forth the relevant facts and procedural history of this case. (**See** Trial Court Opinion, filed 6/11/25, at 1-2). Therefore, we have no reason to restate them. Briefly, we add that this matter commenced on January 18, 2015, when Robert J. Gallagher filed a complaint asserting a medical malpractice claim against Appellee, Wexford Health Services, Inc. ("Wexford"). Wexford provided medical and health services to State Correctional Institution Albion ("SCI Albion") when Mr.

Gallagher was an inmate there.[1]  On May 13, 2022, Appellant filed a suggestion of death, noting that Mr. Gallagher had died and Appellant was the administrator of Mr. Gallagher's estate.  That same day, Appellant filed an amended complaint, substituting Appellant, as administrator of Mr. Gallagher's estate, as the plaintiff in this matter.  Appellant filed a second amended complaint on December 12, 2022, and a third amended complaint on July 17, 2023.

The third amended complaint alleged that Wexford deviated from the acceptable standard of care by failing to adequately provide Mr. Gallagher with medically safe housing after Mr. Gallagher underwent surgery to relieve spinal cord compression.  Appellant alleged that Wexford's failure resulted in Mr. Gallagher falling while going up the stairs shortly after the surgery, causing further injury to his spine.  The complaint further alleged that Wexford failed to timely address Mr. Gallagher's medical needs after this fall, resulting in permanent chronic physical pain.  The complaint asserted that Mr. Gallagher was also diagnosed with depression, anxiety and post-traumatic stress disorder, allegedly in connection with his fall and the aftermath.  The complaint alleged that Mr. Gallagher's mental and physical distress led to Mr. Gallagher committing suicide by overdosing on his prescribed pain medication on January 7, 2022.

In September of 2024, the parties agreed to submit the matter to

---

[1] Mr. Gallagher was released from prison in 2016.

binding arbitration. The parties signed a binding arbitration agreement that was drafted by their chosen arbitration. The arbitrator ultimately rendered a decision in favor of Wexford, finding that Wexford did not breach its duty of care in this matter. On December 10, 2024, Appellant filed a motion to vacate the arbitration award, and the trial court denied the motion on June 11, 2025. Appellant filed a timely notice of appeal on July 8, 2025. On July 14, 2025, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied on July 30, 2025.

Appellant raises the following issues for our review:

> Did the trial court err by not finding that the arbitrator's decision to "let in all evidence" constituted an abdication of the arbitrator's powers and responsibilities—specifically, the obligation to rule on [Appellant's] motion *in limine*—and resulted in an evidentiary "free-for-all," as the only plausible way the arbitrator reached his decision of "no breach of duty" was by weighing both sides' liability experts' opinions and siding with that of [Appellee], whose inadmissible and unfounded opinions on that issue were the very subject of the motion *in limine* [Appellant] filed and which was not ruled on?

> Did the trial court fail to find that the arbitrator exceeded his authority by not entering a monetary award; by not finding that the term "award" clearly and unambiguously referred to a monetary award, rather than a "no liability" decision?

> Did the trial court fail to address [Appellant's] argument that the term "award" in the arbitration agreement was, at least ambiguous, and thus should have been construed against its drafter, the arbitrator, to mandate a monetary award?

> Did the trial court fail to properly analyze the ambiguity of

the term "award" by reference to parol evidence?

Did the trial court err by interpreting the term "award" using a dictionary definition of "arbitration award" that, as the trial court itself pointed out in its opinion, appeared neither in the agreement nor in [Appellant's] motion to vacate and in doing so, did the court in the process disregard all applicable and relevant articulated definitions that confirmed the arbitrator exceeded his specific authority by rendering a "no liability" decision?

(Appellant's Brief at 4) (reordered for purpose of disposition).

On appeal, "we will reverse a trial court's decision regarding whether to vacate an arbitration award only for an abuse of discretion or error of law." *Joseph v. Advest, Inc.*, 906 A.2d 1205, 1208 (Pa.Super. 2006). Interpretation of an arbitration agreement is subject to the general principles of contract law. *Gaffer Insurance Company v. Discover Reinsurance Company*, 936 A.2d 1109, 1114 (Pa.Super. 2007). "When a written contract is clear and unequivocal, its meaning must be determined by its contents alone. In construing a contract, we must determine the intent of the parties and give effect to all of the provisions therein." *Id.* at 1113.

When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances. A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact.

*Kripp v. Kripp*, 578 Pa. 82, 90–91, 849 A.2d 1159, 1163 (2004) (citations

- 4 -

omitted).

"Where the language of the contract is ambiguous, the provision is to be construed against the drafter." **Profit Wize Marketing. v. Wiest**, 812 A.2d 1270, 1275 (Pa.Super. 2002). However, "a contract term that is ambiguous on its face may not be construed against the drafter unless extrinsic evidence bearing on the term's meaning has first been considered[.]" **Schwartz v. Kelly Services., Inc.**, 313 A.3d 453, 457 (Pa.Super. 2024).

> Where a document is found to be ambiguous, inquiry should always be made into the circumstances surrounding the execution of the document in an effort to clarify the meaning that the parties sought to express in the language which they chose. It is only when such an inquiry fails to clarify the ambiguity that the rule of construction … should be used to conclude the matter against that party responsible for the ambiguity, the drafter of the document.

*Id.*

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Marshall J. Piccinini, we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented.

Regarding Appellant's first issue, the court found that the parties' arbitration agreement was governed by the Revised Statutory Arbitration Act ("RSAA").[2] The court concluded that the RSAA does not affirmatively require an arbitrator to consider pretrial motions but gives the arbitrator discretion to

---

[2] 42 Pa.C.S.A §§ 7321.1-7321.31.

set forth the process by which to determine the admissibility of the evidence at the arbitration. The court further determined that Appellant failed to demonstrate that the arbitrator did not consider Appellant's motion *in limine* to exclude Wexford's expert reports. Rather, the arbitrator's statement that "all documents are coming in" at the beginning of the arbitration hearing more aptly suggested that the arbitrator considered Appellant's motion *in limine* and denied it. (**See** Trial Court Opinion at 4-6).

Regarding Appellant's remaining issues combined, the court found that the term "award" in the parties' arbitration agreement was best defined by the definition of "arbitration award" in Black's Law Dictionary. The court determined that this specialized definition of "award" was appropriate in the context of an arbitration agreement and aligned with the use of the term in the RSAA. Based on this definition, the court found that the arbitrator had the authority to decide the issue of liability and was not limited to merely resolving the issue of damages. The court further found that the conduct of the parties, in submitting arbitration statements that argued the issue of liability, did not suggest that the parties agreed to the arbitration with the understanding that the arbitrator would be limited to determining damages.[3]

_____

[3] The trial court opinion does not explicitly state whether the court found that the term "award" in the arbitration agreement was ambiguous. Nevertheless, in interpreting the definition of the term, the court acknowledged that there were multiple plausible definitions for the term "award." The court further considered the parties' conduct, including the parties' pre-arbitration filings,
*(Footnote Continued Next Page)*

- 6 -

The court concluded that the arbitrator did not exceed his authority under the arbitration agreement in rendering a decision on liability and accordingly, Appellant failed to establish a basis to vacate the arbitration award.

On this record, we cannot say the court abused its discretion in denying Appellant's motion to vacate the arbitration award. *See Joseph, supra*. Accordingly, we affirm based on the trial court's opinion.[4]

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 6/2/2026

---

to discern the intent of the parties. As such, although not explicitly stated, the court found that the term was ambiguous and considered parol evidence to determine the parties' intent. As the term "award" was not defined in the arbitration agreement and there were multiple plausible definitions for the term, we discern no error in the court's assessment. *See Kripp, supra*. Appellant further argues that the court should have construed this ambiguity against the drafter, the arbitrator. Nevertheless, as the court fully explained in its opinion, it found that the context of the agreement and the conduct of the parties demonstrated that the parties did not intend to limit the term "award" to a determination of damages. Thus, we cannot say the court erred in declining to construe the term against the arbitrator. *See Schwartz, supra*.

[4] We direct the parties to attach a copy of the trial court's opinion to any future filings involving this appeal.

Filed 7/30/2025 3:25:06 PM Superior Court Western District
868 WDA 2025

## IN THE COURT OF COMMON PLEAS OF ERIE COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| SHERRI L. RANNARD, Administrator of the Estate of ROBERT J. GALLAGHER, | : | TRIAL DIVISION - CIVIL |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| WEXFORD HEALTH SERVICES, INC. and WEXFORD HEALTH SOURCES, INC., | : | DOCKET NO. 10226-2015 |
| Defendants | : | |

## OPINION AND ORDER

PICCININI, J.                                                                                            JUNE 11, 2025

Currently pending before the Court is Plaintiff's Motion, Pursuant to 42 Pa.C.S.A. § 7314 to Vacate the Arbitration Decision of "No Liability" Issued November 26, 2024. In resolving the Motion, we must consider whether the arbitrator's decision should be set aside either because: (1) he failed to rule upon a motion in limine prior to the commencement of the arbitration proceedings; or (2) he exceeded his authority in rendering an award of no liability based upon a finding that Defendants did not breach the duty of care owed to the Plaintiff. For the reasons that follow, we find that Plaintiff has not demonstrated an adequate basis to disturb the arbitrator's decision on either of these grounds, and we therefore deny Plaintiff's Motion to Vacate.

### I. Background

The factual allegations underlying this dispute are well-known to the parties and have been detailed by the Court in previous opinions. For present purposes, we begin in September of 2024,

when the parties agreed to send the matter to binding arbitration. As part of the settlement, the parties consented to a so-called "high/low" agreement, whereby the Plaintiff, Sherri Rannard, as administrator of the Estate of Robert Gallagher, would be guaranteed to receive no less than $100,000 from Wexford, and Wexford would be guaranteed to pay more no more than $600,000 to Rannard. The parties subsequently chose an arbitrator and memorialized the terms of their agreement in October of 2024. The relevant provision of the agreement reads as follows:

> **Binding Arbitration:** The parties agree that the undersigned Arbitrator is empowered to conduct pre-hearing matters and an arbitration hearing and then issue an award that shall be binding upon the parties. After issuance of the award, the Arbitrator will have no further jurisdiction or responsibility, for example, the Arbitrator will have no jurisdiction to mold or enforce any award.

Mot. to Vacate Arbitration, Ex. 5.

In advance of the arbitration, the parties submitted pre-arbitration memoranda to the arbitrator, and it appears uncontested that on November 21, 2024, the arbitration hearing was held in Pittsburgh. According to Rannard, although she submitted a Motion in Limine to the arbitrator as part of her pre-hearing materials, the arbitrator announced prior to the commencement of the proceedings that "all documents are coming in." Br. in Support of Mot. to Vacate, p. 3. A few days later, the arbitrator rendered a decision in favor of the Defendants. Mot. to Vacate Arbitration, Ex. 6. In an email communication to counsel, the arbitrator explained:

> Attached is my award. You will see I find for the defendants. After thorough consideration of the evidence at the hearing and in the record, I worked my way through the elements of negligence. I found that the defendants owed a duty of care to the plaintiff, but then found that the defendants did not breach that duty.

Mot. to Vacate Arbitration, Ex. 7. Rannard's Motion to Vacate the arbitration was filed in this Court on December 10, 2024. The parties have fully briefed their positions, and the matter is now ripe for adjudication.

## II. Applicable Law

The Revised Statutory Arbitration Act governs an agreement to arbitrate made on or after July 1, 2019. 42 Pa.C.S. § 7321.4; *see also Foster v. Nuffer*, 286 A.3d 279, 285 n.3 (Pa. Super. 2022) (noting the Revised Statutory Arbitration Act "wind[s] down common law arbitration in the Commonwealth"). Under the Revised Statutory Arbitration Act, a court is required to vacate an arbitration award upon motion from a party to the arbitration proceeding under several circumstances. *See* 42 Pa.C.S. § 7321.24(a). One such instance is when "an arbitrator refuse[s] to postpone the hearing upon showing of sufficient cause for postponement, refuse[s] to consider evidence material to the controversy or otherwise conduct[s] the hearing contrary to section 7321.16 (relating to arbitration process), so as to prejudice the rights of a party to the arbitration proceeding[.]" *Id.* § 7321.24(a)(3). Another ground for vacatur exists where "an arbitrator exceed[s] the arbitrator's powers[.]" *Id.* § 7321.24(a)(4).

Rannard appears to invoke the Uniform Arbitration Act, and in particular, section 7314 of the Uniform Arbitration Act.[1] In any event, under the Uniform Arbitration Act, nearly identical grounds exist to vacate an arbitration award. *See* 42 Pa.C.S.A § 7314(a)(1)(iii)-(iv). Rannard also cites to common law arbitration cases for the proposition that an arbitration award will be set aside "if it is the result of fraud, misconduct, corruption, or some *other irregularity*." Br. in Support of Mot. to Vacate, p. 5 (quoting *Hade v. Nationwide Ins. Co.*, 503 A.2d 980, 983 (Pa. Super. 1986)

---

[1] The Uniform Arbitration Act differs from the Revised Statutory Arbitration Act in that it applies to agreements to arbitrate made before July 1, 2019, but only if "the agreement to arbitrate is in writing and expressly provides for arbitration pursuant to [the Act] or any other similar statute[.]" 42 Pa.C.S. § 7302(a). Otherwise, an agreement to arbitrate made before July 1, 2019 is "conclusively presumed" to be governed by principles of common law arbitration. *Id.* The Revised Statutory Arbitration Act contains no such "opt-in" requirement.

3

(overruled on other grounds by *Ostroff v. Keystone Ins. Co.*, 515 A.2d 584 (Pa. Super. 1986) (*en banc*))) (emphasis added).[2] Nevertheless, we understand the catchall phrase "irregularity" to encompass these same types of categories. *See Hade*, 503 A.2d at 983 (noting that the term "'[i]rregularity' refers not to the award itself, but to the process used in arriving at the award" and that "a finding that the panel considered an issue beyond the scope of the arbitration clause would support a modification of the award on appeal.").

Thus, we are satisfied that the errors complained of by Rannard in her present Motion to Vacate are cognizable under these standards, and we proceed to consider whether she can, in fact, show that any grounds for vacatur are actually implicated on this record. We address the two issues raised by Rannard chronologically.

### III. Failure to Consider Motion in Limine

Although it is not the primary objection lodged by Rannard, she asserts that the arbitrator improperly overlooked a pre-hearing Motion in Limine, allegedly creating "an evidentiary free for all concerning the expert liability reports of plaintiff's liability expert and the fatally flawed reports of the two Wexford experts' liability opinions." Br. in Support of Mot. to Vacate, p. 3. First of all, it is not entirely clear whether this a challenge to the procedure utilized by the arbitrator or if it is a challenge to his authority to ultimately render a decision without first ruling upon the Motion in Limine. To the extent that this a procedural challenge, it is likewise not clear whether a procedural requirement to rule upon pre-hearing motions even exists. An arbitration award must be vacated where the "arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement," but this provision is inapplicable. 42 Pa.C.S. § 7321.24(a)(3). The Revised

---

[2] In fairness to Rannard, the Court itself made reference to common law arbitration in its Order dated September 19, 2024.

4

Statutory Arbitration Act also mandates that an award be vacated where the arbitrator "refused to consider evidence material to the controversy," *id.*, but in this case the arbitrator is alleged to have stated that "all documents are coming in." Br. in Support of Mot. to Vacate, p. 3. Lastly, an arbitration decision must be vacated where the arbitrator "conducted the hearing contrary to section 7321.16 (relating to arbitration process), so as to prejudice the rights of a party to the arbitration proceeding[.]" 42 Pa.C.S. § 7321.24(a)(3).

Turning to the provisions of section 7321.16, however, there is no apparent procedural hook on which Rannard can hang her hat. It recognizes that "a party to the arbitration proceeding has a right to be heard, to present evidence material to the controversy and to cross-examine witnesses appearing at the hearing." Notably absent is any mention of an affirmative right to have pretrial motions considered by the arbitrator. Somewhat at odds with Rannard's position, section 7321.16 provides:

> An arbitrator may conduct an arbitration in a manner appropriate for a fair and expeditious disposition of the proceeding. The authority conferred upon the arbitrator includes the power to hold conferences with the parties to the arbitration proceeding before the hearing and, among other matters, determine the admissibility, relevance, materiality and weight of any evidence.

42 Pa.C.S. § 7321.16(a). This provision appears to imbue an arbitrator with broad authority to consider (and arguably, not to consider) pre-trial motions offered by the parties. In the end, we need not delineate the precise contours of an arbitrator's authority under section 7321.16 here. It is sufficient to note that Rannard has not identified any applicable procedure in section 7321.16 that was not adhered to by the arbitrator.

Nor is it apparent that Rannard was prejudiced by the alleged failure of the arbitrator to consider the Motion in Limine, particularly where she did not object at the proceeding. Rananrd insists that "Plaintiff, under the assumption that liability was not the subject of the arbitration

5

(though causation and damages were to be determined and an "award" made) did not protest," but for the reasons detailed more fully below, we find this contention to be belied by the record, including Rannard's own Arbitration Memorandum. Br. in Support of Mot. to Vacate, p. 3. As such, any procedural challenge is without merit.

More fundamentally, and relevant to a challenge to the bounds of the arbitrator's authority as well, we do not credit Rannard's characterization of the arbitrator's conduct as a failure to "address[] or resolve[] th[e] crucial motion in limine" so much as it was a denial of that motion. *Id.* The parties' arbitration agreement did empower the arbitrator "to conduct pre-hearing matters[.]" Mot. to Vacate Arbitration, Ex. 5. Still, we do not have a transcript of the arbitration proceeding to know exactly what was said. *See Reinhart v. State Auto Ins. Ass'n*, 363 A.2d 1138, 1141-42 (Pa. Super. 1976) (noting that "[i]t is incumbent on the party who seeks to vacate an arbitration award, to produce clear, precise and indubitable evidence of the errors alleged" and "if the petition to vacate the award and the answer to the petition fail to agree upon the factual and legal bases of the award, then the petitioner must produce conclusive evidence of the issues decided by the arbitrators of which he complains, by affidavits, depositions or otherwise.").

Here, Rannard merely submits that the arbitrator said "all documents are coming in." *Id.* Even assuming this fact is true, nothing about that comment indubitably suggests that the arbitrator did not consider the Motion in Limine. If anything, it suggests that the arbitrator considered, yet denied, the Motion. Otherwise, there would be little reason to clarify that no evidence would be precluded from consideration. All things considered, Plaintiff's own recitation of the facts does not support its argument that the arbitrator improperly failed to consider the Motion in Limine. For these reasons, Rannard has not sufficiently demonstrated that the arbitration award should be vacated due to the arbitrator's failure to consider a pre-hearing motion.

6

## IV. Authority to Render "No Liability" Decision

That brings us to the crux of Rannard's Motion to Vacate. Rannard argues that the arbitrator erred by issuing a decision based upon liability, rather than simply resolving the issue of damages (which could include making ancillary factual determinations pertaining to causation).[3] She relies chiefly on the parties' agreement, and especially the term "award" used therein, correctly observing that "[t]he power and authority of arbitrators are wholly dependent upon the terms of the agreement of submission, and they cannot exercise authority as to matters not included therein, or validly determine the dispute if they violate or act inconsistently with the terms of the submission." Br. in Support of Mot. to Vacate, p. 5 (quoting *Boulevard Associates v. Seltzer Partnership*, 664 A.2d 983, 987 (Pa. Super. 1995). Additionally, we note that "[t]he scope of arbitration is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally." *Doe v. Cheesecake Factory*, 300 A.3d 1070, 1074 (Pa. Super. 2023) (quoting *Warwick Twp. Water & Sewer Auth. v. Boucher & James, Inc.*, 851 A.2d 953, 955 (Pa. Super. 2004)).

"When interpreting a contract, a court should afford undefined terms their ordinary meaning" and a court may seek guidance from dictionary definitions where, as here, the relevant term is left undefined by the parties to the agreement. *Moore v. Commonwealth, Department of Transportation, Bureau of Motor Vehicles*, 19 A.3d 1200, 1206 (Pa. Cmwlth. 2011). Rannard cites to definitions pulled from the Oxford English Dictionary, defining "award" as "an official decision to give something to somebody as a payment, prize, contract, etc." as well as "an amount of money given as an official payment or grant to somebody." Br. in Support of Mot. to Vacate,

---

[3] This is in the nature of a challenge that the arbitrator exceeded his authority pursuant to 42 Pa.C.S. § 7321.24(a)(4).

7

p. 7 (quoting Oxford English Dictionary). Wexford responds by citing to the "legal definition" of the term award, which it defines more broadly as "[t]he decision or determination rendered by arbitrators or commissioners, or other private or extrajudicial deciders, upon a controversy submitted to them; also the writing or document embodying such decision." Response in Opposition to Pl.'s Mot. to Vacate Arbitration, p. 20 (citing Black's Law Dictionary, 6th Edition, West Publishing Co. (1990)). In her Reply Brief, Rannard counters that this definition from the early 1990s is outdated, observing that Black's currently defines "award" as "[a] final judgment or decision, esp. one by an arbitrator or by a jury *assessing damages*." Reply Brief in Support of Mot., p. 6 (citing Black's Law Dictionary (12th ed. 2024), award) (emphasis added).

Staying with Black's, we further note that it contains another definition specifically for the term "arbitration award." That definition reads: "[a] final decision by an arbitrator or panel of arbitrators; specif., a written decision by an arbitral tribunal setting forth the final and binding determination of the merits of a claim, defense, or issue, whether or not the decision resolves the entire dispute." Black's Law Dictionary (12th ed. 2024), arbitration award. Although the term "arbitration award" does not appear in the agreement to arbitrate, it is certainly apparent from the face of the document that the "award" it speaks of is made in the connection with an arbitration, as evidenced by the heading "binding arbitration[,]" as well as the surrounding text. Mot. to Vacate Arbitration, Ex. 5. Hence, this is at least a plausible definition intended by the parties.

Moreover, there is reason to believe that this is more than just a plausible definition of the parties' understanding of the term. "If words have a special meaning or usage in a particular industry, then members of that industry are presumed to use the words in that special way, whatever the words mean in common usage and regardless of whether there appears to be any ambiguity in the words." *Sunbeam Corp. v. Liberty Mutual Ins. Co.*, 781 A.2d 1189, 1193 (Pa.

8

Super. 2001). While this is not a commercial contract *per se*, it is an industry contract of sorts, one presumably negotiated by counsel for the parties, and pertaining to a specialized, alternative process for resolving disputes with which counsel were presumably familiar. Accordingly, we find that the more specialized definition of "arbitration award," drawn from Black's, provides the closest approximation to the intention of the parties with relation to their joint understanding of the term "award" as it is used in their arbitration agreement. This means that the parties contemplated not only that the arbitrator would render a determination on damages, if any, but that he would initially make a determination as to whether Wexford was liable for the alleged conduct at all, *i.e.*, that he would "set[] forth the final and binding determination of the *merits* of a claim, defense, or issue[.]" Black's Law Dictionary (12th ed. 2024) (emphasis added).

Although it is not dispositive of our inquiry, we find further support for this common understanding of the term "award," as used in the specialized context of arbitration, in the Revised Statutory Arbitration Act itself. That statute also leaves the term "award" undefined, despite utilizing it throughout. For instance, the Act defines arbitrator as "[a]n individual appointed to render an *award*, alone or with others, in a controversy that is subject to an agreement to arbitrate." 42 Pa.C.S. § 7321.2 (emphasis added). Surely the General Assembly did not intend to exclude from its definition of "arbitrator" those who render decisions as to liability, at least not without some clearer indication to that effect. Yet, that would be the inevitable result if we were to apply Rannard's proffered definition for the term "award." And applying Rannard's definition to section 7321.24, entitled "Vacating Award," then Rannard would arguably be without a statutory vehicle to vindicate the relief she now seeks. This cannot be the case. While Rannard's more generic definition of "award" pertaining to a "prize" or "money" may be the more generally acceptable

9

definition in common day parlance, it simply does not make sense to define the term so narrowly when it is used in the context of an arbitration proceeding.[4]

Even putting dictionary definitions aside, the parties' conduct, and particularly Rannard's, does not suggest that they understood that the arbitration was intended only to resolve the issue of damages. As Wexford points out, not only does its own Arbitration Statement discuss the issue of liability at length, Def.'s Response in Opposition to Pl.'s Mot. to Vacate, Ex. N, Rannard's own Arbitration Memorandum discusses liability as well, arguing "that Wexford's liability is this case is near that of 'res ipsa loquitor' and is, otherwise, not credibly disputable." *Id.*, Ex. O, p. 3. While this may evince Rannard's belief the issue of liability was a "slam-dunk," it does not suggest that the parties were in agreement that the issue of liability was off the table by any means. In fact, quite the opposite.

Rannard surmises that, in light of the parties' stipulation that "Mr. Gallagher had no medical housing restrictions in May 2013," there can be no doubt that the issue of liability was not before the arbitrator. Br. in Support of Mot. to Vacate, p. 9 (bolding omitted). But there is nothing inherently inconsistent about a finding that Wexford did not breach its duty of care and the fact that Mr. Gallagher had no housing restrictions in May of 2013. Such an argument presumes that Wexford had an affirmative duty of care to impose housing restrictions in May of 2013, but the parties made no such stipulation, and indeed, Wexford formulated an argument as to why this

---

[4] Rannard also relies heavily on a non-precedential federal appellate case, where the Court stated "the arbitrator found in defendants' favor on liability ... The arbitrator therefore did not make a monetary or other award to Kubiak." *Kubiak v. Canon McMillan School District*, 690 Fed.Appx. 80, 82 (3d Cir. 2017) (non-precedential). But the mere existence of this passing reference, alone, does not convince us that the parties to this arbitration agreement intended to use the term "award" in this fashion.

would not necessarily the case in its Arbitration Statement. *See* Def.'s Response in Opposition to Pl.'s Mot. to Vacate, Ex. N, p. 8.

If Rannard had intended to remove the issue of liability from the scope of the arbitrator's authority, then she should have insisted on more specific language to that effect in the agreement. And if the parties had tacitly understood the arbitration to be limited in its scope, their pre-hearing arbitration materials would have more clearly reflected this. As it stands, they did not, and Rannard cannot persuasively demonstrate that the more limited meaning of "award," more often utilized in the non-arbitration context, applied. In other words, the record before the Court, including the arbitration agreement itself, all suggest that the issue of liability was within the scope of the arbitrator's authority. He thus did not exceed his authority when he rendered a decision in favor of Wexford on the basis that it did not breach the duty of care owned to Gallagher. Consequently, the Motion to Vacate is denied.[5]

*     *     *

---

[5] Consistent with 42 Pa.C.S. § 7321.24(d), we will confirm the arbitration award rendered by the arbitrator, but in doing so, we emphasize that the parties are still bound by their 'high/low' agreement. *See Thompson v. T.J. Whipple Construction Co.*, 985 A.2d 221, 228 (Pa. Super. 2009) (noting "[a] high/low agreement, when initially reached by the parties in litigation, is, in fact, a conditional settlement. The condition of the agreement is that the [arbitrator] renders a [decision] that falls outside the range of the high/low agreement. When a verdict is rendered outside the agreed-upon range, the condition is triggered and the 'high' or the 'low' becomes binding upon the parties as a settlement. By contrast, when [an arbitrator] renders a [decision] within the range of the high-low agreement, the condition is not met and the high/low agreement is rendered academic." (citation omitted) (internal ellipses and brackets omitted)). The parties will be directed to file a praecipe to settle and discontinue the matter within a reasonable amount of time for the agreed-upon payment of $100,000 to be distributed to the Plaintiff.

11

For the foregoing reasons, it is hereby **ORDERED, ADJUDGED,** and **DECREED** that Plaintiff's Motion, Pursuant to 42 Pa.C.S.A. § 7314 to Vacate the Arbitration Decision of "No Liability" Issued November 26, 2024 is **DENIED.**

Pursuant to 42 Pa.C.S. § 7321.24(d), it is further **ORDERED** that the arbitration award is confirmed, subject to the parties' "high/low" agreement. The Plaintiff is further **ORDERED** to file a praceipe to settle and discontinue the matter within **90 days** from the date of this Order, or alternatively, to provide an update to the Court on why the matter cannot yet be discontinued.

BY THE COURT:

MARSHALL J. PICCININI, JUDGE

cc:     Court Administration
        Stuart M. Niemtzow, Esquire – 117 Overhill Road, Bala Cynwyd, PA 19004 (for Plaintiff)
        Benjamin M. Lombard, Esquire – Firm # 594, Six PPG Place, Suite 1130, Pittsburgh, PA 15222 (for Defendants)
        Samuel H. Foreman, Esquire – Firm # 594, Six PPG Place, Suite 1130, Pittsburgh, PA 15222 (for Defendants)